First case today, 19-3003, United States v. Purvis. May it please the Court, my name is David Maguirel, I'm the attorney for Adam Purvis, who is the appellant in this matter. This case involves a legal error by the District Court when it misunderstood its authority to vary based on a policy disagreement with the quantity amounts contained in the methamphetamine guideline. We know that the District Court misunderstood its authority, both based on the words that the Court chose to use, such as example, saying, can't provide a basis, but also based on the reasoning behind the Court's denial of the request for variance. The comment that the Court made as it relates to can't provide a basis is in Mr. Purvis' sentencing at page 79. There, the Court said, in my judgment, it can't be, those arguments can't be, can't provide a basis to displace policy decisions that Congress has made and that the Sentencing Commission has based on them. So not only did the District Court err by saying that these arguments can't displace the policy decisions of Congress and the Commission, it also erred because of the reasoning behind that. That is a deference to the institutional competence of Congress and the Sentencing Commission, which Kimbrough explicitly said does not apply in the quantity context of the guidelines because the work that the Commission and Congress did in this instance isn't based on the normal empirical work that the Commission did when it created the guidelines. The Court also used words like choose between two alternatives. Choose between implies the Court recognized it had a choice. And it seemed to me that if you look at the analysis that's incorporated, and this case is a little tricky because we're not only looking at the sentencing hearing transcript, but also the one that was incorporated. And in the incorporated one, the Court rejects the premise of your argument. In other words, it's not a question that you present an argument that says, oh, well, you know, this is all based upon relative harm. And in essence, the guidelines are arbitrary because they rank crack cocaine less severely than meth, and crack cocaine is more harmful. The Court said, I reject the premise of that. And therefore, because I reject the premise of that, I don't buy your argument. And yes, it talks about institutional competence. But you have the one what I think the government referred to as chair picking. And if it didn't, it seems to me that fits. I mean, what goes so? I'll stop now. Explain to me why I'm not right. Your Honor, I agree that the Court said the words like judgment and choice. But the choice comment the Court is talking about is actually the second example that I was going to provide about error. When the Court said choose, it was in, and as the Court pointed out, the other cases transcript at page 19 and 20. When I'm forced to choose between my own assessment of empirical data about various drugs' relative harm and the judgment made by members of Congress, I choose the latter. That's consistent with my view of the courts in our system of government, and in particular, the role that the courts play in that system. So I understand the Court used the word choose, no question. But the Court wasn't stationing it as a choice between the policy disagreements that we put forward and the basis or the reasons that Congress created for pegging the guidelines to the mandatory minimums. Instead, the Court said when I'm faced with that choice, I always choose Congress. I believe that's my role as a judge in a separation of powers context. And this is the second sort of category of error, institutional competence, separation of powers. Normally, that makes sense. The Court should defer to Congress. But it's already rejected your harm policy argument. And if it's rejecting your harm policy argument, this is what I want to understand. Does your argument go so far as to say that if a court is faced with a policy disagreement, a potential disagreement, it looks at the disagreement, it talks about it, it understands where you're coming from, and it says, you know, in this point of lack of uncertainty, I recognize I can make a choice to do what you want me to do. But I also recognize that the Sentencing Commission has a lot of smart people. And if in this realm of uncertainty, I prefer to rely on the Sentencing Commission. Is that error? It's error if the Court doesn't at least engage somewhat in the underlying reasons for those. If the Court says- The Court, this Court engaged in your underlying reasons. It rejected your harm rubric. You said, look, this is, in essence, this is arbitrary. Because if the Sentencing Commission purports to do this based on harm, then its harm is not right. Not because, you know, crack cocaine is more harmful than meth, and crack cocaine gets a lighter sentencing analogy, I mean, sentencing structure. So the Court engages with it. It says, you know, I don't, I just don't buy that. And therefore, it says, well, in this situation, it never used the word always. It did talk about its institutional role. But what I'm saying is, in a point where there's a lack of clarity, and it recognizes what its usual role is, it chooses to defer to the smart guys and women at the Sentencing Commission. Why not? Your Honor, again, if the Court chooses to do that always, that's inconsistent with Kimbrough. But did it say, is that word always in there? I'm looking at the context in which this comes up. If you had given it a slam-dunk policy reason to disagree, and the Court recognizes its basis to disagree, that it can, its authority to, who's to say that it would have done the same thing? There's nothing. I didn't see always in there. Your Honor, I agree. Literally, the word always does not appear in the transcript. Could I flash for, move for a second to your preservation issue? Of course. That issue occupied a lot of my mind, because it seems to me, I just don't see how that can work. And explain to me why I'm wrong. Your argument, the predicate for it, is essentially a failure to articulate. You know? It is a question of what the Court said. And if the predicate for it is what the Court said, why aren't you obliged to object when the Court speaks? Your Honor, the way I understand the way the Court phrased it, a failure to articulate, I do think there's two sort of divergent paths in this Court's authority on this question. I think there is, I don't know if I would call it a failure to articulate, but maybe we're talking about the same thing. A failure to explain, a lack of sufficiency of explanation for a particular thing that the Court does. So the Court, for example, imposes a condition of supervised release, or whatever that particular issue is. And then the defendant on appeal says the Court didn't provide enough rationale or basis to support that. In that instance, I believe you're correct. This Court, Gant is a case that the government pointed to in the reply brief, requires an objection at that point. But that's not the error that we're complaining about here. We're complaining about a legal error that the Court made when it denied something that Mr. Purvis affirmatively requested. The rule anticipates the scenario. Federal Criminal Procedure 51 explicitly says in subsection A that exceptions are unnecessary. And we cited a Seventh Circuit case, Bartlett, in the reply brief that explains that this is what an exception would be. To object again after the Court provides its ruling, or the basis for its ruling. I'm sorry, go ahead. The rule in subsection B explains there's two ways we could preserve a claim of error. The first is by, as the rule says, informing the Court when the Court ruling or order is made or sought of the action the party wishes the Court to take. Which we did. We filed a supplemental sentencing memorandum, requested a variance, requested it again at sentencing. So clearly that was made. And then the second part, it doesn't say one and two in the rule, but I would almost say subsection two, or the party's objection to the Court's action and the grounds for that objection. It doesn't say and. So we did the first. We sought an order, filed a supplemental sentencing memorandum. We cited Lopez-Avila, which is a 2011 case from this Court, that I think explains this distinction. This is a case where Colorado doesn't have a fast track program, apparently maybe they do today, for immigration offenses. Many jurisdictions do. There's a lot of immigration cases in some places. It speeds up the process. There's been some discussion, though, in unpublished decisions about what Lopez-Avila means and what it stands for. And how limited the rule is or not in that case. Before I get to that, I want to talk about this question of what you asked for. What you asked for was a variance. The Court didn't give you a variance. I don't think there's any question at all that you can object to the fact that the Court didn't give you a variance. Substantive reasonableness, you could make that argument. That's not the argument you're making. The argument you're making is the Court did not recognize its authority to give you a variance. How do we know that the Court didn't recognize its authority to give you a variance? Because of what it said. And so when it said what it said, and you knew then, right then and there, real time, it's not recognizing its authority, why aren't you obliged to object then? We've already explained the rule specifically says you don't have to. That's not what you asked for, though. The rule speaks of sought, sought. Is there language in your supplemental, the one that you incorporated, that specifically talks about the Court's authority to do what you wanted it to do? We cited Kimbrough, obviously, in our supplemental sentencing memorandum, and that lays out much of the Court's authority. The government's response cited Spears. I mean, those cases were certainly before the Court. The issue here is I think what the Court is asking for what to occur is would apply, I don't think there's any limitation on it, first of all. I think what the Court asks here would apply to every single sentencing issue that comes before a district court. Well, counsel, can I just jump in there? I think the problem is you're standing there, and the Court is saying things that you disagree with. And you're not saying, Mr. District Court, you're wrong with that. You are misunderstanding your authority. You're not saying that at that time, and that causes us to be here today, right, trying to piece together what was actually meant. I mean, so that's the difficulty, right, is that, I mean, had there been an objection, you know, the Court would have said, no, I don't, I understand, or yes, you're right, yes, I misunderstand. So that's the problem that we're put in today is going back and trying to read what happened when there's no objection. Your Honor, we sought a ruling. We gave the Court the proper authority. If this is correct, I mean, again, we're not complaining about the sufficiency of the explanation. You didn't give enough explanation. We're complaining about the legal basis. That's every sentencing issue that a district court or this Court would see. But is it really? I mean, there is a distinction between, let's assume you asked for a guideline adjustment. You wrote a sentencing memo saying, give me this adjustment, I want this adjustment, blah, blah, blah. You get to the sentencing hearing. The Court denies you the adjustment. I don't think anybody's going to question that you have a right to appeal that. You have preserved that in your sentencing memo. You sought it. You didn't get it. This is not that. This is I'm seeking to have you exercise your authority, and how do I know when you don't exercise your authority? Not when you deny me my variance, but when you speak the words that indicate that you didn't do it. And why is that? You know, there's this sort of substantive realm of procedural error where you ask for a thing and you don't get it. And then there's, to use your word, an explanation error. And why isn't this an explanation error? Your Honor, I want to certainly answer the Court's question. I'd like to reserve some time if possible. Every error is an explanation error. I mean, we're going to ask for something, a defendant's going to ask for something in district court, and when the Court gives an explanation, the Court may err. We may give the Court the standard for an enhancement of the gun guideline in connection with. In connection means X, Y, Z. Then when the Court explains why it's denying our objection to that enhancement, the Court explains in connection with improperly. Even though we've explicitly said here's what this means. We're going to appeal and we're going to come before this Court and say the Court didn't understand and applied the improper rule to in connection with, and the Court erred. This enhancement shouldn't have been applied. So I don't think there's any limitation on what the Court proposes here. It's going to apply to every single error. Again, it's inconsistent with the rule, with this Court's authority, and with the recent Supreme Court decision, Holguin-Hernandez. And if I could reserve that last minute, I would certainly like to. Of course. Thank you, Judge. Good morning, Your Honors. James Brown for the United States. Your Honors, the record does not reflect in any way, shape, or form that the District Court thought it lacked authority to vary based on a policy disagreement. Supplemental Volume I of the Record on Appeal at pages 19 and 20, which the Court referenced in the colloquy with my colleague, show unambiguously that the District Court considered defendants' arguments, appreciated that it had discretion to vary based on those arguments, decided those arguments could not carry the day in the Court's mind, and ultimately decided not to vary. At the bottom, the Court had a policy agreement with the guideline, not a policy disagreement with the guideline. And based on that policy agreement, the policy agreement was to punish methamphetamine offenses more harshly than crack cocaine offenses, based on that policy agreement that is embraced in the guidelines, that reflects the sentiments of Congress, and by extension, the will of the people, the District Court... And what's the policy? I mean, the policy is not a harm policy, because that policy would be arbitrary, wouldn't it, based upon the arguments they were making. So that's not what the policy is. So why couldn't... I assume you have looked at the Camber decision that was cited. Well, why, in this case, the Court's comments look eerily close to the Court's comments in Camber. Why is Camber not decided correctly? We think that Camber... Well, we don't think Camber is decided correctly, no. We don't think it's decided correctly. We think that all the Court has to show, to get error here, the defendant has to show that the Court thought it lacked the authority to vary based on a policy disagreement. That's it. And here, the record just does not show that. Counsel, can I just stop you? So maybe you can expressly address, what do you do with the Court's comments? How do you explain those? The Court's saying, I generally defer. I'm deferring. That's what I do. I defer. That's my principle. What do you do with that? Well, Your Honor, I think what you do is you contextualize those comments, and you contextualize those comments based upon what the district court said at the defendant's sentencing hearing and also the sentencing hearing that preceded it, that the district court incorporated in its reasons for imposing this sentence. And when you contextualize it, and you see what the district court did, the district court talked about his reasons, talked about the relative harm empirical basis, went on at length about the history of the methamphetamine guideline, what Congress thought and didn't thought, what Congress did and didn't do, and then rejected the defendant's basis for a variance based upon the empirical evidence, I think you can say that the district court considered his arguments and rejected them. Now, the ambiguity comes in because the court used the word can't provide a basis. The court could just as easily use the word does not provide a basis or may not provide a basis, but we think that when that comment is viewed in the context of the various other comments the district court made, we think that comment is reconciliable with our argument. But that's not its only comment. I mean, just to go to the point that Judge Hyde alluded to, the court now goes on in the incorporated transcript, I think I'm talking starting on page, I guess it would be 23, in which it starts talking about what its role is and how it sees its role vis-a-vis Congress. That's not talk about, that's not just can't. Arguably, one could say that it decides to cede its responsibility vis-a-vis Congress. That's not my job. That's the policymaker's job. And Kimbrough's telling us that's not right, right? Well, not exactly. Okay. The comment that the court's referring to, which I think is on supplemental volume 1, page 20, that's consistent with my view of the court's system of government, in particular the role that the court should play in that system. The court's just saying, the court made that comment after saying, I agree with the guideline. I agree with the guidelines for the reasons that Judge Browning stated in his opinion. And if you go to Judge Browning's opinion, Judge Browning talks about how those guidelines represent the will of the people expressed through Congress for as a policy reason to treat methamphetamines offenses more harshly than crack offenses. And the court just says, I defer to Congress here. And the reason is because I agree with Congress. I agree with their policy reason. I agree with the policy argument. I cited the Browning decision. The Browning decision sets forth the reasoning behind that policy decision. So in looking at those comments, we think that they just have to be contextualized. When you put all the comments together, you can see that the court agreed with the guideline for a policy reason. Policy reason was to treat methamphetamine offenses more harshly than crack. The court recognized its authority to depart downward. It chose not to depart downward. And for added spice, it said that is consistent with his view of how the role the court should play. In other words, the court was inclined to defer to Congress for policy reasons explained by Congress. Let me ask you, beyond the agree idea, I had alluded to a situation, a hypothetical, if you will, in what the court actually did was not necessarily say that it agreed, you know, affirmatively endorsed the view of the policy of Congress. But let's assume that what it did instead was say, well, look, I'm not particularly persuaded by what you put forward as a policy basis for me to disagree. And therefore, I'm inclined just to stay with what appears to me to be generally a uniform system. In other words, this is generally a uniform system. Yes, I can understand there could be deviation. But you just haven't given me a powerful enough reason to disagree. So I don't have to say that, you know, I buy into this wholeheartedly. But what I do say is generally they're right. And I support that. I mean, would that be error? No, that wouldn't. Because Congress, the district court can agree with Congress. You know, that's our whole point. The district court can't defer. But what I'm saying is it would be an inclination, not a particularized agreement. What it would be essentially saying is, you know, you haven't persuaded me to disagree. And therefore, I am going to adhere to what is generally an appropriate sentencing scheme. Well, we don't think that would be error. Because in the court's hypothetical, the court has stated, I'm not persuaded by your reasons. And that's all the court really needs. The court doesn't have to get down in the dirt and do its own empirical study and come up with its own conclusions and talk about the empirical flaws and all that. The court can say, I'm just not persuaded by your reasoning. And here the reason that the court ultimately deferred to was that Congress expressed a sentiment, which is expressed in the guidelines to treat crack offenses less harshly than methamphetamine offenses. The district court agreed with that. The district court knew it could depart or vary based upon that reason. The district court chose not to. There's just no Kimbrough error here. There may be lots of atmospherics that look like the district court might have not appreciated its discretion, but we think when you look at the entire record, which includes the sentencing hearing before and also the Reyes decision, that's a very important decision. If the court goes to page 1232 of that decision, the court can see the reasoning set out for agreeing with that guideline. And the court expressly said, I agree with Judge Browning's reasoning in the Reyes decision. And the court directed the parties to that. If the court goes to that decision, the reasoning is set forth. So we think there's no way that this record shows that there was a disagreement and there's no way this record shows the district court thought that it could not vary based upon a disagreement. The only thing the record shows is that the district court agreed with the guideline and chose to follow it and was not persuaded by the defendant's empirically based arguments to reject the guideline. Why didn't you raise an argument on the second prong of plain error? I mean, are you that confident that you're right, that you would not make an argument on that? It seems to me that's an easy way to dispose of this if they didn't preserve it. Well, we didn't really. We were confident that there was an error. We were confident that the error didn't affect substantial rights because in any event, if the court accepts that the district court agreed with the guideline, then even if the court didn't appreciate its discretion, it still goes back to your agreement and the court can still agree with it. On plain error, we probably should have briefed that more. We didn't. We're sorry we didn't. Do you accept their premise that if you didn't brief it, you've essentially waived it? I mean, that they don't have the burden to prove it anyway? We think it's a forfeiture but not a waiver, and this court can affirm for any basis supported by the record in the event of a forfeiture but not a waiver. And we think that that argument is supported by other authorities from this court that I can supply with a 28-J letter. Does the court like me to address the standard of review? Please do, and I'm curious if you can directly respond to opposing counsel's argument that in your regime we would just have so many specific objections just constantly, I think is the argument. Could I get you to respond to that? Well, you know, we basically agree with what Judge Holmes was talking about and his colloquy with my colleague, and that is that the defendant here made an objection to the sentence, argued for a variance, asked for a variance. If the district court didn't grant his objection, that would be preserved because he asked for a variance. That's the ruling he sought. But here we have a procedural issue. And just like failure to explain the sentence, this court's law is that the district court has to contemporaneously object, and I think Your Honor can appreciate the reasons for that because a failure to contemporaneously object makes us piece the record together on appeal and read tea leaves as to what the court really meant when it all could have just been cleared up with a simple objection. Here, the defendant, he did not object on the basis that the court misunderstood its authority to depart based on a policy disagreement. He didn't give the court any reason to think that there was any error, any procedural error, error in the explanation of his sentence or anything like that. So we think, yes, the defendant does have to object to some form of procedural error that is not necessarily encompassed by the ruling that he seeks. And what do we do with Lopez Avila? I mean, it seems to me that any fair reading of that creates a certain tension with the argument that you've just articulated and that I think that we find in Romero. Well, we think that the court goes back to the argument that this is a failure to, a failure of articulation. It is similar to failure to adequately explain the sentence, and this court has very clearly stated that a failure to adequately explain the sentence, to preserve that, there must be a contemporaneous objection. So we think the court compares it to those types of cases and applies the rationale of those cases. The name escapes me, but that is the district court's ruling. I mean, that is what this court says. You have to contemporaneously object to the adequacy of the explanation of the sentence. And that's the Romero case, and that's the case from which all of this springs, but that still creates, we've still got to deal with our precedent. I mean, as it continues to flow out, and I think Lopez Avila was the one in which essentially it was in the brief, you know, and there wasn't anything said, and for whatever reason we chose to find that it had been preserved. Am I misremembering? I think the court is correctly remembering that we did not reference the Lopez Avila case because we thought it was a clear case of the error not being preserved. He didn't object on the basis the district court misunderstood its authority to depart. Okay. But we think the case is comparable to the Romero case that the court referenced. It's just the same as failure to adequately explain the sentence. You need a contemporaneous objection to preserve that type of error. That's what you control here. I have nothing further. I yield the remainder of my time to the panel. Does it have any further questions? Nothing. Thank you. Thank you, counsel. Please, the court, two brief points in response to some of the arguments raised by government counsel. On the error issue, the court, Judge Holmes, you sort of put forward this hypothetical where the interpretation is the court was not persuaded by the reasons that were given below. We respectfully disagree that that's what happened here. In the supplemental record for the other sentencing at page 18, the court said, I start in a very different place than his argument begins. So we don't think this is an issue of the court engaged those arguments, the court considered those arguments. The court instead just sort of stepped over and said, I defer to Congress. This is my rule, all the arguments we've made previously. On the preservation issue, again, we'll repeat our argument that this is a never-ending situation. It applies to all sentencing issues. And where do we draw the line? If we say, Judge, we think the court has erred in this ground, and then the court provides a different explanation, do we then need to object to that explanation and explain why that is incorrect? And frankly, we believe it's inconsistent with the rule. This court's authority, Holguin, Hernandez, and other circuits. We ask the court to vacate the sentence and remand for resentencing. Let me ask you a quick question. It would be the case, yes, we have the rule, yes, we have the plain text of the rule. We're going to have to harmonize that rule with whatever precedent we have since then, right? I mean, that's where we are. And that precedent includes Romero, right? Yes, Your Honor. Okay. Thank you. Thank you. Case is submitted. Thank you, counsel, for your good arguments.